## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division



UNITED STATES OF AMERICA, *ex rel.*  )
SETHINA FORTUNATÈ,                  )
                                    )
**and**                             )
                                    )
COMMONWEALTH OF VIRGINIA,           )
*ex rel.* SETHINA FORTUNATÈ,        )
                                    )
    **Relator-Plaintiffs,**          )
                                    )
**v.**                              )
                                    )
NDUTIME YOUTH & FAMILY              )
SERVICES, INC.                      )
                                    )
    **Defendant.**                  )
                                    )
_____)

Civil Action No. 3:16cv653

*Filed In Camera and Under Seal*
*as required by 31 U.S.C. § 3730(b)(2)*
*and Virginia Code § 8.01-216.5*

**JURY TRIAL DEMANDED**

## COMPLAINT

Relator-Plaintiff Sethina Fortunatè ("Relator-Plaintiff" or "Fortunatè") states as follows as and for her Complaint:

### I.
### NATURE OF THE CASE

1.    This is an action to recover damages and civil penalties, on behalf of the United States of America and on behalf of the Commonwealth of Virginia arising out of false claims that were knowingly presented by Defendant NDUTIME Youth & Family Services, Inc. ("NDUTIME" or "Defendant") to the Virginia Department of Medical Assistance Services and to the United States Social Security Administration.

2.      This action also seeks damages for the Relator-Plaintiff arising out of the unlawful and retaliatory termination of her employment with NDUTIME in violation of state and federal law.

3.      This action arises under the provisions of 31 U.S.C. § 3729, *et seq.*, commonly known as the False Claims Act (the "Federal Act"), and Virginia Code §§ 8.01-216.1, *et seq.*, commonly known as the Virginia Fraud Against Taxpayers Act (the "State Act").

4.      The false claims complained of herein arise under the regulations and guidance implementing the Commonwealth of Virginia's Medicaid program; specifically, under the regulations for services provided under the program known as Community Mental Health Rehabilitative Services – Crisis Intervention and Crisis Stabilization.

5.      Defendant knowingly and willfully made fraudulent claims for the purpose of obtaining payment of monies from the Social Security Administration and the Commonwealth of Virginia through the Medicaid Program, and/or condoned the making of such fraudulent claims on its behalf, as set forth below.

## II.
## JURISDICTION AND VENUE

6.      The United States District Courts have exclusive jurisdiction over actions brought under the Federal Act pursuant to 31 U.S.C. § 3732(a), and otherwise have jurisdiction under 28 U.S.C. §§ 1331 and 1345. This Court additionally has jurisdiction over claims brought under the State Act pursuant to 31 U.S.C. § 3732(b), and may exercise supplemental jurisdiction over related state claims pursuant to 28 U.S.C. § 1367(a).

7.      Section 3731(a) of the Federal Act provides in pertinent part that "any action under section 3730 may be brought in any judicial district in which the defendant or, in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which

any act proscribed by Section 3729 occurred." The acts complained of herein occurred in Henrico County, Virginia, and other locations within this judicial district.

8.      Pursuant to the Federal Act, this Complaint is to be filed *in camera* and remain under seal for a period of at least sixty (60) days, and shall not be served on Defendants until the Court so Orders. The United States may elect to intervene and proceed with the action within sixty (60) days or longer if so Ordered by the Court, after it receives the Complaint and Disclosure of Evidence.

9.      Under the State Act, the portions of the Complaint asserting state claims are to be filed in camera and remain under seal for a period of at least one hundred days (120) days, and shall not be served on Defendants until the Court so Orders. The Commonwealth of Virginia may elect to intervene and proceed with the action within one hundred twenty (120) days, or longer if so Ordered by the Court, after it receives the Complaint and Disclosure of Evidence.

## III.
## DEFENDANT

10.     Defendant NDUTIME Youth & Family Services is a non-profit corporation organized and existing under the laws of the Commonwealth of Virginia, with its main office located in Henrico County, Virginia. NDUTIME is a Medicaid Service Provider that has participated in a scheme to defraud the United States of America and, under applicable joint funding provisions, the Commonwealth of Virginia.

11.     As set forth in detail, below, NDUTIME knowingly and willfully presented, or caused to be presented, false submissions for payment to the Virginia Department of Medical Assistance Services and/or the Virginia Medicaid Program, and created and used, or caused to be created and used, false statements and records in order to ensure payment for fraudulently billed

3

crisis intervention and stabilization services and Medicaid claims, in violation of state and federal law.

## IV.
## RELATOR-PLAINTIFF

12.     Relator-Plaintiff Sethina Fortunatè ("Relator Plaintiff" or "Fortunatè") is a citizen of the United States and a resident of the Commonwealth of Virginia. Fortunatè was employed by NDUTIME for approximately three (3) months as a Mental Health Crisis Counselor, until her unlawful termination on or about August 9, 2013.

16.     As required under the False Claims Act, 31 U.S.C. § 3730(a)(2), Fortunatè shall provide to the Attorney General of the United States and the United States Attorney for the Eastern District of Virginia a statement of material evidence and information related to the allegations set forth herein.

17.     As required under the Virginia Fraud Against Taxpayers Act, Virginia Code § 8.01-216.1 *et seq.*, Fortunatè shall provide to the Attorney General of the Commonwealth of Virginia a statement of material evidence and information related to the allegations set forth herein.

## V.
## FACTUAL ALLEGATIONS
### RELATOR-PLAINTIFF'S EMPLOYMENT WITH DEFENDANT NDUTIME

18.     Fortunatè began her employment with NDUTIME on or about May 6, 2013. Fortunatè was employed as a Mental Health Crisis Counselor, with a Qualified Mental Health Professional ("QMHP") designation.

19.     Fortunatè's job duties included providing face-to-face crisis intervention and stabilization services to clients of NDUTIME, conducting mental health assessments, developing

and implementing treatment plans, providing direct therapeutic treatment/counseling services, and completing documentation related to same.

20.     During her brief employment with NDUTIME, Fortunatè was a dedicated employee who performed her job competently and effectively.

21.     While an employee of NDUTIME, Fortunatè discovered numerous issues concerning billing practices that were not compliant with federal and state regulations mandated by NDUTIME's participation in the Medicaid reimbursement program.

22.     Fortunatè addressed her concerns with NDUTIME management and opposed her employer's conduct of knowingly presenting false submissions to, and creating and using false statements and records in order to receive payment from, the United States government and the Commonwealth of Virginia.

23.     When Fortunatè voiced her opposition to NDUTIME's fraudulent billing practices and refused to participate in the wrongful billing, NDUTIME terminated her employment in retaliation for that opposition, in violation of federal and state law.

### REGULATIONS GOVERNING MEDICAID REIMBURSEMENT TO NDUTIME FOR CRISIS INTERVENTION AND STABILIZATION SERVICES

24.     NDUTIME is a Community Mental Health Rehabilitative Services provider for adults and children, licensed by the Virginia Department of Behavioral Health and Developmental Services, subject to federal and state regulation for Medicaid reimbursement. On information and belief, at all times relevant hereto and presently, NDUTIME has been a party to contracts with the Commonwealth of Virginia regarding reimbursement for Crisis Intervention and Crisis Stabilization services to persons receiving benefits under Medicaid programs.

25.     Reimbursement for Crisis Intervention and Crisis Stabilization services under Medicaid is governed by regulations implementing Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq.*

26.     The Medicaid program provides for state administration of services, with federal grants to or reimbursement for the services provided by the state agency or a third-party provider. 42 U.S.C. §§ 1396 *et seq.*

27.     The Virginia Department of Medical Assistance Services ("VDMAS") is the state agency designated to administer or supervise the administration of the Medicaid program under Title XIX of the Social Security Act. 12 Va. Admin. Code § 30-10-10.

28.     VDMAS has published its written policies and procedures regarding reimbursement for Crisis Intervention and Crisis Stabilization services in the "Community Mental Health Rehabilitative Services" manual. The manual defines Crisis Intervention covered services as "mental health care, available 24 hours a day, seven days per week, to provide assistance to individuals experiencing acute mental health dysfunction requiring immediate clinical attention." Community Mental Health Rehabilitative Services Manual, Chap. IV at 44 (07/15/2011). The manual defines Crisis Stabilization covered services as "direct mental health care to non-hospitalized individuals (of all ages) experiencing an acute crisis of a psychiatric nature that may jeopardize their current community living situation." Community Mental Health Rehabilitative Services Manual, Chap. IV at 48 (07/15/2011).

29.     Crisis Stabilization services must be documented through daily notes and a daily log of times spent in the delivery of services. Community Mental Health Rehabilitative Services Manual, Chap. IV at 49 (07/15/2011).

6

30.     For both Crisis Intervention and Crisis Stabilization, the manual states that "staff travel time is excluded from billable time." Community Mental Health Rehabilitative Services Manual, Chap. IV at 45, 50 (07/15/2011).

31.     For Crisis Intervention services, a unit of service is fifteen (15) minutes. Community Mental Health Rehabilitative Services Manual, Chap. IV at 45 (07/15/2011). Each unit is reimbursed by VDMAS at $30.79 per unit. Community Mental Health Rehabilitative Services Manual, Chap. V at 24-6 (07/15/2011). Moreover, a face-to-face contact with the client must occur in the session in order to bill Medicaid for Crisis Intervention services. Community Mental Health Rehabilitative Services Manual, Chap. IV at 45, 50 (07/15/2011).

32.     For Crisis Stabilization services, a billing unit is one (1) hour. Community Mental Health Rehabilitative Services Manual, Chap. IV at 50 (07/15/2011). Each unit is reimbursed by VDMAS at $89.00 per unit. Community Mental Health Rehabilitative Services Manual, Chap. V at 24-11 (07/15/2011). The maximum billable units for Crisis Stabilization services are eight (8) hours a day for up to fifteen (15) consecutive days. *Id.*

### RELATOR-PLAINTIFF IS INSTRUCTED BY NDUTIME TO DISREGARD REGULATIONS FOR REIMBURSEMENT OF CRISIS INTERVENTION AND STABILIZATION SERVICES

33.     Upon commencement of employment with NDUTIME in May 2013, Fortunatè was provided a series of forms to document the services she provided NDUTIME's clients including a form titled "Crisis Intervention/Crisis Stabilization Services Progress Notes" ("Progress Notes") The form was used to provide daily notes and a daily log of time spent providing services to NDUTIME clients.

34.     The form included a place to insert the client name, chart/Medicaid ID number, date, billable units/hours, place of session, type of service, and time. There was additional space to describe the focus/goal of the session, techniques used, client's mood/affect, client's behavior,

intervention, client's response, and to provide a narrative summary of the Crisis Intervention or Stabilization session.

35.     On information and belief, the "Progress Notes" forms were used by and maintained by NDUTIME for billing VDMAS for Crisis Intervention and Stabilization services reimbursement.

36.     Following a session of Crisis Intervention or Crisis Stabilization services, Fortunatè would complete the "Progress Notes" form and accurately record the time spent providing the covered services to the client (i.e. 2:30PM-3:30PM) and the corresponding billable hours (i.e. four (4) Crisis Intervention Units).

37.     Per NDUTIME policy, Fortunatè would then e-mail the "Progress Notes" to the Crisis documentation department, headed by Clinical Field Supervisor Ms. Shalanda Jackson.

38.     The clients' "Progress Notes" would then be returned by e-mail to Fortunatè with Ms. Jackson's notes and revisions. Ms. Jackson's revisions regularly increased the time spent providing the covered services to the client and the corresponding billable units/hours listed on Fortunatè's "Progress Notes." The revisions made by Ms. Jackson did not accurately reflect the time spent providing covered services, as originally recorded by Fortunatè, and likewise served to increase the billable hours/units beyond the originally entered accurate amount.

39.     When increasing the time spent/billable units on a "Progress Notes" form, Ms. Jackson would often write-in and highlight in yellow, "[t]his should be a 32 unit note" regardless of the time actually spent providing covered services. A 32 unit, or 8 hour, note would be the maximum daily reimbursable billable units of services allowed for by VDMAS regulations. Moreover, on or about July 29, 2013, NDUTIME held a meeting with its Mental Health Crisis Counselors in which it advised the Counselors that "when you have a client in the hotel you have

8

to bill 8 hours/32 units a day." On information and belief, no such mandate is provided for or allowed by VDMAS regulations covering Crisis Intervention and Stabilization services and is instead an NDUTIME policy or practice used to defraud the Medicaid program.

40.     During the course of her employment, NDUTIME management and ownership, including, owner and Chief Operating Officer, Teshana Henderson, stated that NDUTIME counselors have to "bill for the max," which, as described above and below, was the mantra adopted by Clinical Field Supervisor Ms. Jackson when making revisions to Fortunatè's "Progress Notes."

41.     By way of example, on or about July 8, 2013, Fortunatè completed a "Progress Note" for client AB for services rendered on July 1, 2013 and sent same to Ms. Jackson by e-mail. The note accurately reflected that Fortunatè had provided Crisis Intervention services from 2:30PM-3:30PM and 8:00PM-9:00PM, amounting to 8 billable units.

42.     Ms. Jackson returned the revised "Progress Note" for client AB for services rendered on July 1, 2013 to Fortunatè by email on July 25, 2013. The "Progress Note" included Ms. Jackson's revisions to the narrative section as well as a note in the "time" section stating ""[t]his should be a 32 unit note," and increasing the hours from 1:00PM-3:30PM and 8:00PM-11:30PM to now reflect 24 (or 32) billable units.

43.     In addition to fraudulently increasing the number of billable units/hours, Ms. Jackson's revisions also would change a Crisis Intervention session into a face-to-face session to make the time reimbursable under VDMAS regulations and sought to prevent Fortunatè from including information in her narrative that would be detrimental to NDUTIME's fraudulent Medicaid billing practices. By way of example, in the narrative of a "Progress Note" for services provided to client YB on or about July 18, 2013, Fortunatè accurately recorded that she would

provide transportation for the client. Ms. Jackson's revisions to the note highlight in red the word "transportation," and then state in highlighted yellow "never use the word transportation in a note." Staff travel time is specifically excluded from billable time by VDMAS regulation in Crisis Intervention and Stabilization services.

44.     On information and belief, NDUTIME's policy and practice of fraudulently increasing the time spent providing covered services and corresponding billable hours/units was not limited to Fortunatè's "Progress Notes," but extended to the three (3) other Mental Health Crisis Counselors employed by NDUTIME to provide Crisis Intervention and Stabilization services during Fortunatè's tenure with the Company.

## NDUTIME SUBMITS FRAUDULENT CLAIMS FOR REIMBURSEMENT OF CRISIS INTERVENTION AND STABILIZATION SERVICES

45.     On information and belief, NDUTIME used the fraudulent "Progress Notes" to submit to VDMAS pre-printed forms detailing reimbursable Crisis Intervention and Stabilization services that it had purportedly provided to clients. These "Daily Progress" forms were to be completed by Mental Health Crisis Counselors but, as described above, were revised by NDUTIME management to inaccurately state the time and services provided. Fortunatè objected to and questioned NDUTIME falsely representing in these submissions that services had been performed for a particular amount of time (when, in fact, they had been performed for a lesser amount of time than represented) and to NDUTIME's seeeking reimbursement for such services.

46.     NDUTIME knowingly engaged in the practice of falsely submitting, on a regular basis, documents for reimbursement for services that had not been performed for the length of time attested to in the submission for reimbursement and/or that were not reimbursable under applicable statutes, regulations, and/or guidelines.

47.     On information and belief, both before and during Fortunatè's employment, and thereafter, NDUTIME continued its pattern of knowingly and willfully submitting false claims for Medicaid reimbursement through the processes and methods described herein.

### FORTUNATÈ OBJECTS TO NDUTIME'S FRAUDULENT BILLING PRACTICES AND HER EMPLOYMENT IS TERMINATED

48.     While an employee of NDUTIME, Fortunatè repeatedly raised questions with management, including Ms. Jackson (Clinical Field Supervisor) and Margret Wright (billing), as well as with co-workers, regarding the fraudulent and unethical practices she observed and/or in which she was instructed to engage.

49.     In response NDUTIME management would state that the time spent was increased on the "Progress Notes" because "that is just policy."

50.     Following multiple attempts to get a straight answer from NDUTIME on their billing practices, it became clear to Fortunatè that she was seen as a nuisance by NDUTIME management and that they were determined to terminate her employment with the company.

51.     On or about August 9, 2013, Fortunatè again told Ms. Jackson that she did not feel comfortable with and opposed NDUTIME's billing practice. That same day, she was called into a meeting with Ms. Jackson (Clinical Field Supervisor), Chartrice Throne (Director of Clinical Services), and Tiffany Ford (Human Resources Representative) and told that her employment was terminated purportedly for missing a doctor's meeting with a client (that she had in fact attended) and "violation of policies and falsifying clinical time keeping records" – the very issues she had been raising with NDUTIME management over the past month.

52.     Following the termination of her employment, Fortunatè was advised by NDUTIME that she would not be paid for some of the work she performed prior to her separation because she had not yet completed certain documentation for clients – further

pied

rsettings

evidence that the proffered reason for her termination was pretext and clear evidence of additional retaliation in the form of withholding wages.

53. After her employment was terminated, Fortunatè refused to complete client documentation that she believed would be revised by NDUTIME to inaccurately state the time spent providing covered services and to support NDUTIME's fraudulent claims for reimbursement from VDMAS.

54. As a result of NDUTIME's retaliation, Fortunatè has suffered lost wages, back-pay damages, and compensatory damages, and has incurred attorneys' fees and costs.

## COUNT ONE
### Fraudulent Claims in Violation of 31 U.S.C. § 3729, *et seq.*
### (False Claims Act)

55. Relator-Plaintiff incorporates and relies upon the preceding and subsequent paragraphs as if fully set forth herein.

56. NDUTIME engaged in a pattern and practice of defrauding the federal and state governments by knowingly and willfully submitting claims for reimbursement for Crisis Intervention and Stabilization services that were never provided, or that were provided for shorter periods of time than that for which NDUTIME billed the federal and state governments.

57. The submissions referenced above constituted false claims under the Act, and specifically under 31 U.S.C. § 3729(a)(1)(A)-(C).

58. NDUTIME made these claims seeking to obtain financial benefit by obtaining reimbursement under the Medicaid program for services either not rendered or not allowed by the controlling statutes, regulations, administrative directives and guidelines.

12

59.     The Medicaid program is entitled to full recovery of all amounts paid by the Medicaid program and any other federally funded or state funded programs as a result of the submission of claims for services which were not performed and/or were not permitted, or which NDUTIME caused to be submitted to the Medicaid program.

## COUNT TWO
### Fraudulent Claims in Violation of Code of Virginia § 8.01-216.1, *et seq.*
### (Virginia Fraud Against Taxpayers Act)

60.     Relator-Plaintiff incorporates and relies upon the preceding and subsequent paragraphs as if fully set forth herein.

61.     The submissions referenced in above constitute false claims under the Virginia Fraud Against Tax Payers Act, specifically Va. Code § 8.01-216.3(A)(1)-(3).

62.     The Virginia Fraud Against Tax Payers Act, Va. Code § 8.01-216.3(A), defines one making a "false claim" as any person who (1) knowingly presents, or causing to be presented, a false or fraudulent claim for payment or approval; (2) knowingly makes, uses or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Commonwealth; and (3) conspires to defraud the Commonwealth by getting a false or fraudulent claim allowed or paid.

63.     NDUTIME engaged in a pattern and practice of defrauding the Commonwealth by knowingly submitting claims for reimbursement for services without having satisfied the conditions for payment from the Virginia Medicaid program and the Virginia Department of Medical Assistance Services at the unit/hour level submitted. NDUTIME management directed and was aware or made aware of these practices, but continued the practices and terminated Relator-Plaintiff in retaliation for her opposition.

64.     NDUTIME made these claims seeking to obtain financial benefit by obtaining reimbursement under the Virginia Medicaid program for services not rendered or allowed by the controlling statute and regulations.

65.     The Virginia Medicaid program is entitled to full recovery of all amounts paid by these programs and any other federally funded or state funded programs as a result of the submission of claims for services which were not performed and/or were not permitted, or which NDUTIME caused to be submitted to the Virginia Medicaid program.

### COUNT THREE
### Retaliation in Violation of 31 U.S.C. § 3730(h)
### (False Claims Act)

66.     Relator-Plaintiff incorporates and relies upon the preceding and subsequent paragraphs as if fully set forth herein.

67.     NDUTIME retaliated against Fortunatè for her opposition to practices made unlawful by 31 U.S.C. § 3729 by terminating her employment and by withholding wages when she internally reported and voiced opposition to, in an effort to stop, fraud committed against the federal and state governments by NDUTIME in violation of 31 U.S.C. § 3729.

68.     As a direct and proximate result of NDUTIME's conduct, Fortunatè has suffered, continues to suffer, and will in the future suffer, loss of wages and benefits, great humiliation, distress, injury, and damages, damage to her reputation, loss of employment opportunities, loss of earning capacity, embarrassment, inconvenience, litigation expense including attorneys' fees and costs, consequential damages including loss of career development opportunities, and other injury.

## COUNT FOUR
### Retaliation in Violation of Va. Code §8.01-216.8
### (Virginia Fraud Against Taxpayers Act)

69.     Relator-Plaintiff incorporates and relies upon the preceding and subsequent paragraphs as if fully set forth herein.

70.     NDUTIME retaliated against Fortunatè for her opposition to practices made unlawful by Va. Code § 8.01-216.3 by terminating her employment and by withholding wages when she internally reported and voiced opposition to, in an effort to stop, fraud committed against the federal and state governments by NDUTIME in violation of Va. Code § 8.01-216.3.

71.     As a direct and proximate result of NDUTIME's conduct, Fortunatè has suffered, continues to suffer, and will in the future suffer, loss of wages and benefits, great humiliation, distress, injury, and damages, damage to her reputation, loss of employment opportunities, loss of earning capacity, embarrassment, inconvenience, litigation expense including attorneys' fees and costs, consequential damages including loss of career development opportunities, and other injury.

## PRAYER FOR RELIEF

WHEREFORE, Relator-Plaintiff Sethina Fortunatè, on behalf of herself, the United States of America, and the Commonwealth of Virginia, requests the following relief:

(a)     judgment against Defendant in an amount of three (3) times the amount of damages the United States of America and the Commonwealth of Virginia have sustained as a result of Defendant's actions, plus a civil penalty for each action taken by Defendant in violation of and pursuant to 31 U.S.C. § 3729 and/or Va. Code § 8.01-216.3, and costs of this action, with interest, for Counts One and Two;

15

(b)      in the event that the United States and/or Commonwealth of Virginia proceeds with this action, that Relator-Plaintiff be awarded twenty-five percent (25%) of the proceeds of any action or settlement of a claim, for Counts One and Two;

(c)      judgment against Defendant in the amount of two (2) times the amount of back pay and benefits with interest at the applicable pre- and post-judgment statutory rates, reinstatement or front pay in lieu thereof, and/or the present value of expected income and benefits Relator-Plaintiff would have earned had her employment continued without Defendant's illegal interference, and compensation for special damages for Counts Three and Four;

(g)      judgment against Defendants awarding Relator-Plaintiff reasonable attorneys' fees and costs of this suit for Counts One through Four; and

(h)      grant such other and further relief as this Court deems necessary and proper.

RELATOR-PLAINTIFF REQUESTS TRIAL BY JURY

Respectfully Submitted,

SETHINA FORTUNATÈ

By _____
                                     Counsel

Rebecca H. Royals (VSB# 71420)
Paul M. Falabella (VSB# 81199)
BUTLER ROYALS, PLC
140 Virginia Street, Suite 302
Richmond, Virginia 23219
Telephone (804) 648-4848
Facsimile  (804) 237-0413
Email:  rebecca.royals@butlerroyals.com
paul.falabella@butlerroyals.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of August, 2016, I served a copy of the Complaint filed in this matter by Certified Mail, Return Receipt Requested, to: Hon. Loretta E. Lynch Attorney General for the United States of America, Main Justice Building, 950 Pennsylvania Avenue, N.W., Washington, D.C. 20530; Hon. Dana J. Boente, United States Attorney for the Eastern District of Virginia, 919 E. Main Street, Suite 1900, Richmond, Virginia 23219; and Hon. Mark R. Herring Attorney General for the Commonwealth of Virginia, 202 N 9th St, Richmond, VA 23219.

By _____

Rebecca H. Royals (VSB# 71420)
Paul M. Falabella (VSB# 81199)
BUTLER ROYALS, PLC
140 Virginia Street, Suite 302
Richmond, Virginia 23219
Telephone (804) 648-4848
Facsimile  (804) 237-0413
Email:  rebecca.royals@butlerroyals.com
paul.falabella@butlerroyals.com